UNITED STATES DISTRICT
COURT MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION

CHARITY PINEGAR

    PLAINTIFF,

v.

CASE NO.: 8:20 cv2626 T35 SPF

SHORE REJUVENATION DAY SPA,
LLC, and HOLLY AMBER SHARPE,
individually

    DEFENDANTS.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CHARITY PINEGAR ("Plaintiff"), by and through undersigned counsel, files this Complaint for violations of the Fair Labor Standards Act, 29 U.S.C. §201 et seq., and violations of the Internal Revenue Code 26 U.S.C. §7434 against Defendants, SHORE REJUVENATION DAY SPA, LLC, a Florida Limited Liability Company doing business in Sarasota, Florida ("SHORE"), and Defendant HOLLY AMBER SHARPE, an individual, ("HAS"), (collectively hereinafter SHORE and HAS are referred to collectively as "Defendants"), and states as follows:

### JURISDICTION

1. Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, *et seq.*, hereinafter called the "FLSA") to recover unpaid wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs.

2. Jurisdiction in this Court is proper as the claims are brought pursuant to the Internal Revenue Code 26 U.S.C. §7434 and 26 U.S.C. § 3121(d)(2) for misclassification of employee status to

1

recover unpaid wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs.

3. The jurisdiction of the Court over this controversy is based upon 29 U.S.C. §216(b) and 26 U.S.C. §7434.

4. This Court should exercise supplemental jurisdiction over all related state law claims.

## PARTIES

5. At all times material hereto, Plaintiff was, and continues to be, a resident of Manatee County, Florida.

6. At all times material hereto, Plaintiff was employed in Sarasota County.

7. At all times material hereto, SHORE was a for-profit Limited Liability Company doing business in Sarasota, Florida. Further, at all times material hereto, upon information and belief, SHORE was engaged in business in Florida, with principle places of business in Sarasota, Florida.

8. At all times relevant to this action, HAS controlled the finances and operations of SHORE, including instructing and/or permitting and/or expecting Plaintiff to spend her personal funds on SHORE's business expenses (e.g. material for headbands, pillowcases, masks, etc.), with the promise of reimbursement.

9. At all times relevant to this action, upon information and belief, HAS was a resident of Sarasota County and the State of Florida, and HAS owned, managed, and/or operated SHORE.

10. At all times relevant to this action, HAS regularly exercised the authority to set policy, set pay, determine employee schedules, determine employee or independent contractor classification, determine exempt or non-exempt status of employees under the FLSA, and hire and fire employees of SHORE, including Plaintiff.

11. At all times relevant to this action, HAS had authority to determine the terms and conditions of employment for employees working at SHORE, including Plaintiff.

2

12. At all times relevant to this action, HAS had authority to determine contractor or employee status of all individuals employed by or engaged by SHORE.

13. At all times relevant to this action, HAS and SHORE were each Plaintiff's "employers" as defined by 29 U.S.C. §201 *et seq.*

14. At all times material hereto, SHORE, upon information and belief, was and continues to be, a business that earns at least $500,000.00 in annual sales.

15. At all times material, upon information and belief, SHORE was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

16. Therefore, Defendants are an enterprise covered by the FLSA as defined by 29 U.S.C. §203(r) and §203(s).

17. At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendants.

18. At all times material hereto, the Plaintiff was engaged in interstate commerce as a result of routine and daily calls and emails which travelled in interstate commerce outside the state of Florida.

19. At all times material hereto, Plaintiff's job duties included receiving data from outside Florida and entering it into Defendants' systems.

20. At all times material hereto, Plaintiff was a misclassified contractor, and subsequently became an employee of SHORE and HAS within the meaning of the FLSA.

### STATEMENT OF FACTS

21. Plaintiff re-alleges and re-avers paragraphs 1 through 20 of the Complaint as if fully set forth herein.

22. On or about April 2019, the Defendants engaged Plaintiff as a "contracted aesthetician" at SHORE, despite governing Plaintiff's schedule and methodology, providing Plaintiff's tools and supplies, assigning Plaintiff clients, not permitting Plaintiff to decline work, and requiring Plaintiff to perform work as assigned by SHORE and/or HAS with no discretion permitted to Plaintiff as to those assignments by SHORE and/or HAS.

23. On or about, November 8, 2019, Plaintiff was reclassified as an employee rather than an independent contractor, despite no change in the terms or conditions of Plaintiff's employment.

24. In order to run a spa, Defendants hire aestheticians such as Plaintiff to perform spa services for Defendants on a regular basis.

25. The supplies used by Plaintiff to perform services at the spa were provided by Defendants.

26. Plaintiff performed services solely for Defendants' clients and could not perform any services for a client who may have only been Plaintiff's client.

27. Plaintiff wore attire at the spa with the "Shore" logo/brand.

28. The spa/aesthetician-related services performed by Plaintiff for Defendants was and is essential to the Defendants' spa business.

29. Plaintiff was required to use Defendants' scheduling system, billing, branded forms, and Defendants' spa products.

30. Defendants maintained all records related to services performed by Plaintiff on behalf of Defendants, including the use of Defendants billing system to provide compensation to Plaintiff without any invoice provided by the Plaintiff to the Defendants for services performed.

31. The Defendants kept and maintained all records associated with Plaintiff's performance of work, including hours worked, during Plaintiff's period of misclassification as an independent contractor.

32. The Defendants controlled all assignments of Defendants' clients to Plaintiff.

33. The Defendants unilaterally set Plaintiff's compensation, which was not negotiable as would be expected in a true independent contractor relationship.

34. Plaintiff was not engaged in a separate business or profession, but instead worked exclusively for the Defendants on a long-term basis, rather than periodically, and regularly worked for the Defendants on a weekly basis.

35. Plaintiff was dependent on Defendants for Plaintiff's livelihood.

36. The days and hours worked by Plaintiff was controlled by Defendants. To obtain work each day, Plaintiff was required to check in with the Defendants' at the start of Plaintiff's work shift, at which time Plaintiff was provided her assignment(s). Throughout the course of the workday, Plaintiff received further instructions on further assignments from the Defendants and was expected to continue working until all Defendants' clients had been served. Plaintiff was required to use Defendants' billing and scheduling system to monitor and report, in real time, the status of Plaintiff's work for Defendants throughout the day.

37. Plaintiff's work for the Defendants was integrated into the Defendants' regular business operations and are essential to the Defendants' day-to-day operations.

38. The Defendants required Plaintiff to perform daily treatment room inspections, other maintenance obligations and inspections to the Defendants' equipment, perform laundry-related services, perform cleaning and sanitizing, and other tasks as assigned by Defendants.

39. In reality, Defendants controlled the means, manner, and methods by which Plaintiff performed Plaintiff's work for the Defendants.

40. Defendants willfully misclassified Plaintiff as an independent contractor in order to minimize costs and unduly maximize profits at the expense of their primary workforce.

41. Defendants' unlawful conduct of misclassifying Plaintiff also allowed Defendants to deprive Plaintiff of fundamental employment rights, such as the right to minimum wage, the right to

5

accurate itemized wage statements, the right to the prompt payment of full wages within time limits designated by law, the right to workers compensation protection guaranteed to employees under Florida Statute Chapter 440, and the right to re-employment compensation benefits provided to Florida employees.

42. As a result of Defendants' misclassification of Plaintiff, Plaintiff was damaged financially and did not have coverage for unemployment benefits, for workers' compensation injuries, and for the benefit of retirement-related payroll taxes.

43. Throughout Plaintiff's employment with the Defendants, beginning on or about September 2019, Plaintiff had to use her own personal funds, in excess of approximately $100.00 worth of supplies, which supplies were for the sole benefit of Defendants' business. Defendants did not make purchases of such supplies which were necessary for Plaintiff to perform her job, even though they were aware the supplies were needed.

44. Plaintiff purchased supplies with personal funds to complete a sewing project after regular working hours for Defendants.

45. Plaintiff worked approximately 16 hours on the project sewing COVID-19 masks and repairing SHORE's headbands and body wraps, using supplies Plaintiff was instructed to personally procure at Plaintiff's own expense.

46. The Defendants promised to reimburse Plaintiff for the purchase of supplies.

47. Plaintiff was never paid for the time spent working after-hours on the sewing project.

48. Plaintiff is owed wages for time spent on sewing project.

49. Plaintiff was required to pay in excess of $3,305.00 from her personal funds for training-related fees for trainings that were attended at the instruction of the Defendants, and for the benefit of the Defendants' business.

50. Plaintiff was required to pay approximately $350.00 in fuel charges to travel to the trainings at the instruction of Defendants, and for the benefit of Defendants.

51. Plaintiff was required to pay approximately $750.00 in lodging/hotel charges to travel to the trainings at the instruction of Defendants, and for the benefit of Defendants.

52. In addition to the training fees paid as provided for in this Complaint, Plaintiff was required to pay approximately $50.00 from her personal funds for supplies needed by the models in some of these trainings, with such models required in order to complete the training(s).

53. Plaintiff was not paid by Defendants for any travel time or for her attendance at these trainings, which were attended at the instruction of the Defendants and for which training the Defendants' business would benefit.

54. Plaintiff spent approximately 156.75 hours of her personal time attending the mandatory trainings.

55. Plaintiff was not paid $1,346.48 in wages owed by Defendants for her attendance at the mandatory trainings.

56. Upon information and belief, Defendants did not keep accurate records related to the trainings Defendants instructed Plaintiff to attend, and for which trainings Defendant would benefit.

57. Upon instruction by Defendants, Plaintiff took Defendants' spa equipment home for repair by Plaintiff's spouse, an engineer, and Plaintiff's personal funds were expended on maintaining and repairing Defendants' equipment.

58. This equipment was essential in the Defendants' ability to do business.

59. None of the time spent by Plaintiff in transporting the equipment for repair and assisting with the repair was compensated or recorded by Defendants.

60. Plaintiff spent additional hours after the workday performing errands for Defendants.

61. The time Plaintiff spent on transporting/maintaining/repairing equipment and running errands was unpaid. Plaintiff estimates that those unpaid hours total approximately 53 hours, 13 of which were overtime hours.

62. For the approximate 53 hours of unpaid time, Plaintiff is owed $463.50 in regular hourly wage and $262.50 in overtime hourly wage, calculated based on her rate of pay of $12.50 per hour.

63. The Defendants requested that Plaintiff use her own funds to pay the business' expenses without reimbursement from any of the Defendants, which resulted in Plaintiff receiving less than minimum wage per hour as required by the FLSA throughout Plaintiff's employment, starting on or about April 18, 2019. This failure to provide Plaintiff with the FLSA's guaranteed minimum wage due to requesting Plaintiff use her personal funds to purchase business supplies resulted in Plaintiff receiving less than minimum wage for all hours worked in several work weeks.

64. Defendants' requirement that Plaintiff repeatedly use her own personal funds to pay the business's expenses without reimbursement resulted in Plaintiff receiving less than the mandated minimum wage throughout Plaintiff's employment.

65. Beginning on or about May 15, 2020, Plaintiff became concerned over the Defendants' failure to reimburse any the business expenses paid by the Plaintiff from Plaintiff's own personal funds at the request of and for the benefit of the Defendants. As a result of the Defendants failing to reimburse Plaintiff despite repeatedly Defendants requesting and requiring Plaintiff to use her own personal funds to purchase business supplies and to pay for trainings, Plaintiff began documenting her requests for reimbursement to Defendants. Those requests were made on the business email account.

66. To date, despite Plaintiff's requests for reimbursement and attempts to resolve this issue without court intervention, Defendants have failed to reimburse Plaintiff for her after-hours work, for her unpaid travel and mandatory training events, have failed to pay Plaintiff minimum wage and overtime, have failed to reimburse Plaintiff for her purchase of supplies to perform required after-hours work, and only a very small portion, if any, of the personal funds Plaintiff expended to purchase business supplies at the specific direction of and for the exclusive benefit of the Defendants and their business have been reimbursed.

67. On August 31, 2020, Plaintiff was constructively discharged by the Defendants in retaliation for her requests to be paid in compliance with the FLSA.

68. Defendants' instruction that Plaintiff purchase business supplies for Defendants' exclusive benefit at Plaintiff's personal expense caused Plaintiff's regular hourly wage to dip below minimum wage.

69. Defendants have violated Title 29 U.S.C. §206 and 207 from at least April 18, 2019, and continuing through today's date:

    a. Defendants have failed to deliver in excess of approximately $100.00 in reimbursement to Plaintiff for business expenses and equipment personally paid by Plaintiff for the sewing project she was instructed to complete after-hours, with these purchases made by Plaintiff only after being instructed by Defendants to use Plaintiff's personal funds to make such business purchases and supplies;

    b. Defendants have failed to deliver at least $4,455.00 in reimbursement to Plaintiff for fees and travel expenses personally paid by Plaintiff, which expenses were made by Plaintiff only after being instructed by Defendants to use Plaintiff's personal funds to attend trainings that benefitted Defendants' business;

c. Defendants must pay Plaintiff her regular rate and overtime at time and one half of Plaintiff's regular rate for all hours worked in a work week under the Fair Labor Standards Act;

d. Plaintiff provided pre-suit opportunities for Defendants to address these issues via correspondence by Plaintiff to Defendants, to no avail, thus requiring Plaintiff to seek judicial intervention;

e. Defendants have failed to make payments, or provisions for payment, to properly compensate Plaintiff at the agreed upon rate for all hours worked for Defendants, including all hours worked over 40 in a work week, as provided by the FLSA and as provided by agreement between the parties;

f. Defendants have failed to maintain proper time and wage records as mandated by the FLSA.

70. At the time of Plaintiff's termination, in addition to Defendants' failure to pay for unrecorded time worked at the instruction of the Defendants, the Defendants owed Plaintiff $575.00 in commissions and tips, in addition to other outstanding wages.

71. Plaintiff has retained Christine R. Sensenig, Esquire of Sensenig Law Firm, P.A. to represent Plaintiff in the litigation in order to enforce Plaintiffs rights under the FLSA, and Plaintiff has agreed to pay a reasonable fee and costs for such representation.

## COUNT I
### RECOVERY OF UNPAID WAGES INCLUDING OVERTIME AGAINST ALL DEFENDANTS

72. Plaintiff re-alleges and re-avers paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73. The Defendants, in instructing Plaintiff to use her personal funds to purchase business supplies for the Defendants' exclusive benefit as a condition of her employment, ultimately made impermissible deductions from Plaintiff's wages.

74. In addition, Defendants' instructing Plaintiff to attend trainings, and then failing to record travel time and training time and failing to reimburse Plaintiff for all supplies purchased to attend the required training, ultimately resulted in impressible deductions from Plaintiff's wages.

75. Pursuant to 29 CFR 541.602(b), there are no permissible deductions of which the Defendants may avail themselves in the instant case.

76. As there is no statutory or regulatory justification allowing the Defendants to demand Plaintiff use her personal funds to purchase business supplies for the exclusive use and benefit of the Defendants as a condition of her employment, such expenditures by Plaintiff are deducted from Plaintiff's regular hourly rate in determining Plaintiff's regular hourly wage.

77. The Defendants' engaging in impermissible deductions from Plaintiff's wages caused Plaintiff's regular hourly rate to regularly drop below minimum wage throughout Plaintiff's employment.

78. During the course of Plaintiff's employment with the Defendants, Plaintiff regularly performed over 40 hours of work for the Defendants in a work week; Defendants failed to pay Plaintiff overtime pay at the statutory rate of 1.5 times Plaintiffs regular hourly rate for every hour worked beyond 40 during any given week.

79. The actions of the Defendants were willful, because Plaintiff informed the Defendants of their continuing obligation to reimburse her for the use of her personal funds for purchases made on the instruction of the Defendants, and for the exclusive use and benefit of the Defendants.

80. Further, the Defendants have made statements which indicated to Plaintiff that neither of the Defendants intend to reimburse Plaintiff for the personal funds she expended upon instruction

from Defendants for the purchase of business supplies made as a condition of Plaintiffs employment, on the specific instruction and for the exclusive use and benefit of the Defendants; Defendants are thus willfully acting in bad-faith, and not merely out of ignorance or negligence.

81. Individual liability is thus paramount to Plaintiffs recovery, especially in light of SHORE's failure to pay its vendors, which failure is known to Plaintiff and other staff members simply because of answering the phone and having the vendors demand payment, in addition to Defendants requesting Plaintiff take spa linens home to do laundry instead of having the vendor provide laundry services. The outstanding wages were not properly paid to Plaintiff due to Plaintiff being instructed to use her own personal funds to purchase supplies for the sole use and benefit of the Defendants.

82. Individual liability is appropriate under the FLSA, because: "In the context of the Fair Labor Standards Act, an 'employer' is 'both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. §203(d)).

83. Individual liability can be incurred under the FLSA as there is an overwhelming weight of authority establishing that "a corporate officer with operational control of a Limited Liability Company's covered enterprise is an employer along with the Limited Liability Company, jointly and severally liable under the FLSA for unpaid wages." <u>Lamonica v. Safe Hurricane Shutters, Inc.</u>, 711 F.3d 1299 (11th Cir. 2013); <u>Patel v. Wargo</u>, 803 F.2d 632, 637-38 (11th Cir. 1986).

84. Whether or not any given supervisor was Plaintiff's "employer" under the FLSA "does not depend on technical or isolated factors but rather on the circumstances of the whole activity.

Factors that weigh into this "whole activity" analysis include whether and to what extent the individual-employer had:

a. operational control of significant aspects of the company's day-to-day functions;

b. control over employee compensation, and/or determining employee salary;

c. control over employee schedules; and,

d. authority to hire and fire employees.

85. HAS qualifies as Plaintiffs "employer" under the FLSA because:

a. HAS had the ability to exercise operational control of significant aspects of the company's day-to-day functions, including setting SHORE's weekly and monthly appointments, changing appointments, services, and policies at HAS's discretion;

b. HAS would exercise control of when and if any and all bills were paid;

c. HAS would exercise control over employee compensation, and/or determining employee salaries;

d. HAS exercised control over employee schedules; and,

e. HAS had the authority to hire and fire employees.

86. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages and lost compensation for time worked from approximately April 2019 through September 2020. Liquidated damages are required in the same amount due to Defendants' willful and repeated refusal to pay Plaintiff her proper wages, and to reimburse her for purchasing business supplies.

87. Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in Plaintiff's favor against the Defendants:

a. Declaring, pursuant to 29 U.S.C. § 201 *et seq.* that the acts and practices complained of herein are in violation of the FLSA, without which the Defendants would surely continue their illegal pay practices;

b. Awarding Plaintiff wages in the amount due to her pursuant to her regular hourly rate for time worked for the Defendants, totaling approximately $463.50;

c. Awarding Plaintiff wages in the amount due to her pursuant to her training hourly rate of $8.59 for time worked for the Defendants while attending trainings which benefitted the Defendants' business, totaling approximately $1,346.48;

d. Awarding Plaintiff overtime wages at the appropriate statutory rate of 1.5 times Plaintiff's regular hourly rate for all hours worked in excess of 40 in any given work week, totaling approximately $262.50;

e. Awarding Plaintiff liquidated damages in an amount equal to the wage and overtime award, totaling approximately $2,072.48;

f. Awarding Plaintiff reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

g. Awarding Plaintiff pre-judgment interest; and,

h. Ordering any other further relief the Court deems just and proper.

<u>**COUNT II**</u>
**DECLARATORY RELIEF FOR MISCLASSIFYING PLAINTIFF AS AN INDEPENDENT CONTRACTOR**

86. Plaintiff, by this reference, incorporate the allegations set out in paragraphs 1-20 and 22-42 as if they were set out fully here.

87. All Plaintiff's work activities for Defendants are and have been as an employee under the FLSA. For any and all time worked by Plaintiff, Plaintiff is entitled to declaratory relief for being misclassified as an independent contractor.

14

88. Defendants' policy of wrongfully classifying an employee like Plaintiff as an independent contractor is and has been a willful violation of §§ 203(e) and (g) of the FLSA.

89. As a result of Defendants' violation of the FLSA, Plaintiff has suffered damages by failing to receive benefits and appropriate tax payments and is entitled to a declaratory judgment that for the time period Plaintiff was misclassified, Plaintiff was an employee not an independent contractor.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter declaratory and other relief as follows in Plaintiff's favor against the Defendants:

   a. Declaring, pursuant to 29 U.S.C. § 201 *et seq.* that the acts and practices complained of herein are in violation of the FLSA, without which the Defendants would surely continue their illegal pay practices;

   b. Declaring that Defendants' willful and unlawful actions void any and all restrictive covenants Defendants may seek to enforce against the Plaintiff, due to the Defendants' unclean hands and violations of the FLSA.

   c. That this Court issue such injunctive and/or declaratory or other equitable relief to which the Plaintiff may be entitled, so that the unlawful behavior of the Defendants may be stopped;

   d. Awarding Plaintiff wages in the amount due to her pursuant to her regular hourly rate for time worked for the Defendants during the period Plaintiff was misclassified;

   e. Awarding Plaintiff overtime wages at the appropriate statutory rate of 1.5 times Plaintiff's regular hourly rate for all hours worked in excess of 40 in any given work week during the time period Plaintiff was misclassified;

    f. Awarding Plaintiff liquidated damages in an amount equal to the wage and overtime award;

    g. Awarding Plaintiff reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

    h. Awarding Plaintiff pre-judgment interest; and,

    i. Ordering any other further relief the Court deems just and proper.

## COUNT III
### RETALIATION AGAINST ALL DEFENDANTS

90. Plaintiff re-alleges and re-avers paragraphs 1 through 71 of the Complaint as if fully set forth herein.

91. Plaintiff first complained to the Defendants about their failure to reimburse her for having used her personal funds for the Defendant's business expenditures for business supplies and equipment, which the Defendants instructed Plaintiff to make for the exclusive use and benefit of the Defendants, in or about June 2020. Plaintiff continued to complain about the failure to pay her wages properly, and to reimburse her for the business supplies she purchased for the sole benefits and use of one or more of the Defendants on a regular basis.

92. Plaintiff provided an email to the Defendants requesting compensation for her improperly paid wages, for training and supply-related issues, and for reimbursement of the equipment and/or business supplies Plaintiff purchased with her personal funds upon the instruction of the Defendants.

93. Neither of the Defendants made any attempt to address Plaintiff's wage complaints in 2020.

94. Plaintiff suffered severe emotional distress as a direct result of the actions of the Defendants and their threats of retaliation.

95. Plaintiff suffered retaliation as a result of the actions of the Defendants by not paying Plaintiff $575.00 in commissions and tips due to Plaintiff at time of termination.

96. Plaintiff thus suffered an adverse employment action, i.e. constructive discharge, in retaliation for her complaining to Defendants about Defendants' illegal pay practices.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in Plaintiffs favor against the Defendants:

   a. Declaring, pursuant to 29 U.S.C. §2201 *et seq.,* that the acts and practices complained of herein are in violation of the wage and hour provisions of the FLSA, without which the Defendants would surely continue their illegal pay practices;

   b. Awarding Plaintiff compensation in the amount due to Plaintiff for all hours already worked, as well as the back pay and front pay Plaintiff was denied due to the Defendants' unlawful retaliatory actions;

   c. Awarding Plaintiff liquidated damages in an amount equal to the unpaid wages;

   d. Awarding Plaintiff reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

   e. Awarding Plaintiff pre-judgment interest; and,

   f. Ordering any other further relief the Court deems just and proper.

## COUNT IV
### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

97. Plaintiff re-alleges and re-avers paragraphs 1 through 71 of the Complaint as if fully set forth herein.

98. Plaintiff conferred a number of benefits to the Defendants that Defendants enjoyed throughout the course of Plaintiff's employment and now enjoy post-employment, due to the Defendants' instruction that Plaintiff use her personal funds to purchase business supplies for the sole use

and benefit of the Defendants as a condition of Plaintiffs employment, including without limitation:

    a) Material and sewing supplies to repair headbands and wraps;

    b) Supplies for repairs to the Athena AC-2080a machine and,

    c) Working unrecorded hours, including overtime hours, to perform the requested repair services.

99. The Defendants have knowledge of the benefits described throughout this Complaint, and that such benefits were purchased upon the instruction and for the use and sole benefit of the Defendants.

100. The Defendants continue to use and enjoy the exclusive benefits of the business supplies Plaintiff purchased using her own funds per the instruction of the Defendants.

101. The Defendants used and continue to use the business supplies purchased by Plaintiff in the regular course of their commercial business throughout Plaintiff's employment and continue to enjoy the use and the sole benefit of such supplies and equipment subsequent to Plaintiff's constructive discharge.

102. The Defendants are reaping commercial profits off the fruits of illegal deductions to Plaintiff's wages.

103. It would be inequitable for the Defendants to continue to commercially profit from and enjoy the use of such supplies without remuneration to Plaintiff, when such benefits were acquired unlawfully and to the detriment of Plaintiff.

**WHEREFORE,** Plaintiff respectively requests that this Court award Plaintiff the costs and reasonable attorneys' fees incurred in prosecuting this action pursuant to the FLSA; award Plaintiff all outstanding wages, fees, commission, bonuses, and other outstanding remuneration, including but not

limited to liquidated damages as permitted by the FLSA, as damages suffered by Plaintiff; award judgment in favor of Plaintiff and against the Defendants; award Plaintiff prejudgment interest for all damages awarded; order that Plaintiff is relieved of any and all obligations under the contract; and, grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Respectfully Submitted November 6, 2020.

/s/ Christine R. Sensenig, Esquire
CHRISTINE R. SENSENIG, ESQ.
TRIAL COUNSEL
Sensenig Law Firm, P.A.
Bar Number 0074276
1515 Ringling Blvd, Ste 230 Sarasota, FL 34236
Sarasota, FL 34236
Telephone: (941) 953-2828/Fax: (941) 953-3018
E-mail: csensenig@senseniglawfirm.com
Attorney for Plaintiff CHARITY PINEGAR